STATE OF MAINE *vs.* WESTERN UNION TELEGRAPH COMPANY.

Cumberland.    Opinion May 31, 1882.

*Constitutional law.    Stat. 1880, c. 246.    Taxation of telegraph companies.*

Stat. 1880, c. 246, entitled "an act for the taxation of telegraph companies," is constitutional, and a tax imposed under its provisions is valid.

This statute was intended to and does impose a tax upon the use of the property, or business of the corporation, and not upon the property itself.

ON REPORT.

An action to recover the tax of twenty-five hundred dollars assessed by the Governor and Council upon the defendant corporation, for the year 1880, by virtue of stat. 1880, c. 246, which was enacted March 19, 1880, and reads as follows :

"An act for the taxation of telegraph companies. Be it enacted by the senate and house of representatives in legislature assembled, as follows :

"Section 1. That every telegraph corporation, company or person doing business within the limits of this State shall annually

pay into the State treasury a tax of two and one-half per centum on the value of any telegraph line owned by said corporation, company or person within the limits of this State, including all poles, wires, insulators, office furniture, batteries and instruments, and any circumstances or conditions which affect the value of the property.

"Section 2. Every such corporation, company or person shall annually, on or before the fifteenth day of April, return to the secretary of state, under the oath of its superintendent, the amount and value of all the property enumerated in section one, owned by it within the limits aforesaid, together with the names and residences of all shareholders living in this State, and the number of shares owned by each on the first day of April annually, and the Governor and Council shall determine said values and assess said tax thereon on or before the first day of May annually. The secretary of state shall thereupon certify said assessment to the state treasurer, who shall forthwith notify the several parties assessed thereof. Said tax shall be paid into the treasury on or before the first day of September annually, and shall be in lieu of all State or municipal taxation on any of the property or shares of said corporations, companies or persons.

"Section 3. If any corporation, company or person aforesaid fails to make the return herein provided, the Governor and Council shall proceed to make said assessment on such valuation as they think just, with such evidence as they are able to obtain, and such assessment shall be final. And if any such corporation, company or person fails to pay the tax required by this act, the state treasurer may forthwith commence an action of contract in the name of the State, for the recovery of the same with interest.

"Section 4. When such tax is paid, it shall be the duty of the state treasurer to credit to each town such proportion of the tax of each company as the number of shares in said company owned in said town bears to the whole number of said company's shares owned in the State, the remainder to be retained for the use of the State.

"Section 5. All acts and parts of acts inconsistent herewith, are hereby repealed, and this act shall take effect when approved."

*Henry B. Cleaves*, attorney general, for the State, cited: *Paul* v. *Virginia*, 8 Wall. 168; *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 567; *Lafayette Ins. Co.* v. *French*, 18 How. 404; *The Cin. Mut. Health Association Co.* v. *Rosenthal*, 55 Ill. 85; *Western Union Telegraph Co.* v. *Mayer*, 28 Ohio, 521; Hillard on Taxation, 30, § 258; *Durach's Appeal*, 62 Penn. 491; Cooley's Const. Lim. 3d ed. 496; *Comm'rs of Ottawa Co.* v. *Nelson*, 19 Kansas, 234; *Dyar* v. *Farmington Village Corpo.* 70 Maine, 515; 62 Maine, 62; *Commonwealth* v. *People's Savinys Bank*, 5 Allen, 428; *Commonwealth* v. *Hamilton Manufacturing Co.* 12 Allen, 298; *Cheshire* v. *County Commissioners*, 118 Mass. 386; *Francis, Treas.* v. *A. T. & S. F. R. Co.* 13 Kansas, 220; *Society of Savings* v. *Coit*, 6 Wall. 607; State Freight and Tax Cases, 15 Wall. 232; *Att'y Gen'l* v. *Bay State Mining Co.* 99 Mass. 148; *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75; *State Railroad Tax Cases*, 2 Otto, 575; *Sharpless* v. *Mayor of Phila.* 21 Penn. 168; *Tappan* v. *Merchants*, 16 Wall. 490; *Baker* v. *Cincinnati*, 11 Ohio. St. 534; *Ducat* v. *Chicago*, 48 Ill. 172; *DeCamp* v. *Eveland*, 19 Barb. 81; *Providence Bank* v. *Billings et al.* 4 Peters, 170; *Catlin* v. *Hull* 21 Vt. 152; *People* v. *B. & A. Railroad*, 70 N. Y. 569; *Albany R. R.* v. *Brownell*, 24 N. Y. 345; *Home Ins. Co.* v. *City of Augusta*, 50 Geo. 543; *Kitson* v. *Mayor*, 26 Mich. 325; *Reading Railroad* v. *Pennsylvania*, 15 Wall. 232; *State* v. *Carrigan*, 37 N. J. L. 264; *McMillen* v. *Anderson*, 16 Albany Law Journal, 335; *Gilpatrick* v. *Saco*, 57 Maine, 277; *Chicago, Burlington and Quincy Railroad Co.* v. *Paddock*, 75 Ill. 616; *Rhodes* v. *Cushman*, Auditor, 45 Ind. 85: *Gennessee Valley Nat'l Bank* v. *Supervisors, etc.* 53 Barb. 223; *Western R. R. Co.* v. *Nolan*, 48 N. Y. 513; *Clinton School District's Appeal*, 6 P. F. Smith, 315; *Stewart* v. *Maple*, 70 Penn. St. 221.

*Orville Dewey Baker*, (*Joseph Baker* with him,) for the defendant.

The provisions of the constitution which relate to taxation are these:

"Art. IV, part III. Section 1. The legislature . . shall have full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this constitution, nor to that of the United States.

"Art. I. Section 22. No tax or duty shall be imposed without the consent of the people, or of their representatives in the legislature.

"Art. IX. Section 7. While the public expenses shall be assessed on polls and estates, a general valuation shall be taken at least once in ten years.

" Section 8. All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof.

" Section 9. The legislature shall never, in any manner, suspend or surrender the power of taxation."

This law proposes to tax all the property of the corporation, situated in Maine ; not the value of the company's stock, but the value of its property. It embraces all the open and tangible property of the company in the State and nothing more. It does not tax the franchise of the corporation because it is not specified, and if to be taxed, should and would be named, as in the railroad tax act, stat. 1880, c. 249. Nor does it tax its capital stock, nor its business or earning capacity, nor its income, net or gross.

The value of the stock is no measure of the taxable value of the property, nor is the value of the property any measure of the value of the stock or franchise. *Ins. of Chicopee* v. *Co. Com'rs,* 16 Gray, 38 ; *Coml'th* v. *Hamilton M'f'g Co.* 12 Allen, 298, 302 ; *Same* v. *Cary Improvement Co.* 98 Mass. at p. 22.

Therefore a tax laid on the franchise, or capital stock, or business or income is not a tax laid on property, and *e converso* a tax laid on property is not a tax on the franchise, capital stock, business or income.

This tax cannot be sustained upon any principles of constitutional law. It cannot be sustained as an excise tax or license. It has just been decided in a leading case in New Hampshire that an excise cannot be constitutionally imposed and this under a constitution which, though it differs from ours in some particulars

resembles it in more. *State* v. *U. S. and Can. Express Co.* 23 Alb. Law J. 303 ; *Com.* v. *Hamilton M'f'g Co.* 12 Allen, 301.

This tax does not lay or purport to lay an excise or license, but simply a property tax. The subjects of taxation are thus defined by the Supreme Court of the United States in the case of the *State Tax on Foreign held Bonds*, 15 Wall. 319.

"These subjects are persons, property and business. Whatever form taxation may assume, whether as duties, imposts, excises or licenses, it must relate to one of these subjects."

"Corporations may be taxed, like natural persons, upon their property and business." See also, *Glascow* v. *Rowse*, 43 Mo. 479 ; Cooley on Taxation, 393.

A tax on the "use" of the property would be on its business ; on the "capacity" would be on its franchise or capital ; on the "productiveness" would be on its income ; but a tax on the "value of the property" would be the tax at bar and no other.

The three former taxes would be excises ; the last is a tax on property, pure and simple. See *Oliver* v. *Wash. Mills*, 11 Allen, 274 ; *Provident Institution* v. *Mass.* 6 Wall. 631 ; *Society for Savings* v. *Coite*, 6 Wall. 594 ; *State Tax* v. *R. R. Gross Receipts*, 15 Wall. 284 ; *Com.* v. *Provident Institution*, 12 Allen, 312 ; *Same* v. *Lowell Gas Light Co.* 12 Allen, 75 ; *The Del. R. R. Tax*, 18 Wall. 206 ; *Com.* v. *People's Five Cent Savings Bank*, 5 Allen, 428.

As a property tax it cannot be sustained. A property tax to be valid must be proportional and uniform. This is so. 1. Independent of all constitutions and by the nature and definition of taxation itself. Opinions of Justices, 58 Maine, 591 ; Cooley on Taxation, 1, 16, 17 ; *Sutton's Heirs* v. *Louisville*, 5 Dana, 28, 31 ; *Knowlton* v. *Supervisors*, 9 Wis. 410 ; *Woodbridge* v. *Detroit*, 8 Mich. 274, 301 ; *Grim* v. *School District*, 57 Penn. St. 433 ; Cooley's Const. Lim. 616, 617, 622, 625 ; 2 Kent's Com. 331 ; Smith's Wealth of Nations, B. 4. c. 2.

By the common opinion of jurists and political writers, by repeated declarations in bills of rights, and by the universal maxims of free government, no man can be held by a property

tax to contribute more than his "share" to the common burden. Within that is taxation; beyond it, is confiscation.

2. The same principle is found in the express provisions of our constitution. Const. Art. IX, sec. 8; *Jones* v. *Winthrop Savings Bank*, 66 Maine, 245; *Knowlton* v. *Supervisors*, 9 Wis. 410.

If anything could make more certain the distinct and unequivocal language of the constitution, or emphasize its assertion that taxation must be uniform between classes as well as between individuals of a class, it would be the record proceedings of the constitutional commission which framed the taxation clause now in force.

The construction, put upon the constitution by its framers, is its best test. The commission had distinctly before them the two plans of taxation; the one giving, the other refusing the power to tax by classes. They deliberately rejected the former and adopted the latter.

A tax to be "equal" must also be proportional. By our constitution taxes must be "apportioned" equally, and apportionment itself means that "the sum demanded of any one person, or laid upon any one parcel of property, must have fixed relation to the whole tax, as well as to that demanded of every other person, or laid upon every other piece of property." Cooley on Taxation; *Bank* v. *Ohio*, 3 Ohio St. 15; *Knowlton* v. *Supervisor*, 9 Wis. 410; *Attorney General* v. *Winnebago Lake Co*. 11 Wis. 35; *Lumsden* v. *Cross*, 10 Wis. 225; *Gilman* v. *Sheboygan*, 2 Black, 510.

The tax before us is not proportional or uniform. It is not proportional because it is not based on either of the proportions which control. It bears no fixed relation either to the whole taxable property of the State, or to the whole amount needed and raised for the use of the State.

Viewed as a State tax, it is not uniform or proportional either in mode or rate. It taxes the telegraph property at a fixed rate year after year, and all other property at a rate which varies or may vary with each year. It taxes the telegraph property at twenty-five mills and all other State property at five mills. A more monstrous inequality could be hardly found.

Viewed as a municipal tax, it is void. Because the State has no right, under our mode of government to assess a purely municipal tax. Because it establishes a radically different system or rule of municipal taxation for telegraph property from that which the towns fix for other property. In the case at bar the fixed percentage of the taxing act is materially greater than the average tax rate declared from all the towns in the State, and including State, county and municipal taxation. One is twenty-five mills and the other is eighteen and seventy-two hundredths mills.

Whether this tax be viewed as an excise or as a property tax, it is void, because levied for a purpose beyond the taxing power of the legislature. The purpose of a tax is shown by the mode of its distribution, by the objects to which, or the persons to whom it is to go.

By § 4 of this act each town is to receive such a proportion of the tax as the number of shares owned in said town bears, not to the whole number of shares, but to the whole number owned in this State, "the remainder" to be retained for the use of the State. But obviously, there never can be any remainder, for whether there is one share or the whole of a given corporation owned in the State, it must all go to the towns, and none to the State.

In this case there were forty-one shares only held in the State, and owned by four shareholders. Under sect. 4, Thomaston would get one forty-first of the whole tax, Calais, ten forty-firsts, and Portland, thirty forty-firsts. The remaining towns get nothing, the State gets nothing.

It is a State tax levied for the benefit of three towns; a State tax for local purposes, as much so as if laid to build a reservoir, or pave a street in Portland. *Lexington* v. *McQuillan's Heirs*, 9 Dana, 513 ; *Howell* v. *Bristol*, 8 Bush. 493, 497 ; *Wells* v. *Weston*, 22 Mo. 384 ; *Gilman* v. *Sheboygan*, 2 Black, 510 ; *State* v. *Haben*, 22 Wis. 629 ; *Madison Co.* v. *People*, 58 Ill. 350 ; *Bright* v. *McCullough*, 27 Ind. 223 ; *Knowlton* v. *County*, 9 Wis. 410 ; *Hale* v. *Kenosha*, 29 Wis. 599 ; *Slatteu* v. *People*, Sup. Court Ill. 1875 ; 7 Chicago Legal News, 292 ; *Hammett* v.

*City of Phila.* 8 Law Reg. (N. S.) 411; *Dyar* v. *Farmington Vill. Corp.* 70 Maine, 515.

The consequences would be:

1. That Portland would have to raise eighteen hundred and twenty-nine dollars, that Calais would have to raise six hundred and ten dollars, and that Thomaston would have to raise sixty-one dollars less money every year for taxable purposes, and the tax of every individual in these three towns would be ratably diminished.

2. That every other town which contains taxable telegraph property, while it must raise the same sum by taxation, has so much less property to raise it from and each citizen's tax is ratably increased.

DANFORTH, J. This is an action to recover the amount of a tax assessed upon the defendant corporation by virtue of c. 246, of the acts of 1880. The defence is that the act is void as in violation of the constitution.

That the legislature has the power to tax a foreign corporation to any extent it pleases as a condition upon which such corporation may be permitted to exercise its franchise in this state, may be considered as well settled law. *Dryden* v. *G. T. Railway of Canada,* 60 Maine, 512; *Paul* v. *Virginia,* 8 Wallace, 168; *Liverpool Ins. Co.* v. *Massachusetts,* 10 Wallace, 566; *Ducat* v. *Chicago, Ib.* 410. Under these and similar authorities it would seem that the tax in question might be sustained as against this defendant, though a somewhat graver question might possibly arise as to the proper remedy under a refusal to pay.

It is, however, evident that this tax was not imposed upon any such ground. The act includes all like corporations, both foreign and domestic, as well as companies and persons doing the same kind of business. We therefore propose to discuss the law as applicable to these several classes, as the legislature clearly intended it.

There is no pretence of any charter limit to the liability of this company, to any taxation which may be imposed upon any corporation, company or person. The objections rest upon the prohi-

bition found in the constitution and in the inherent nature of taxes imposed for the support of government.

In this discussion we must start with the fundamental principle, now well settled, that all acts passed by the proper authority in conformity with established forms, are presumed to be in accordance with the constitution and none will be declared otherwise so long as any reasonable doubt of its violation of the fundamental law remains. Sedgwick on Statutory and Constitutional Law, 2d ed. 409, and cases cited.

Another principle equally well settled is thus stated by BIGELOW, C. J., in *Commonwealth* v. *Hamilton M'f'g Co.* 12 Allen, at p. 301, "Where the language of the legislature is fairly susceptible of two interpretations, that one is to be adopted which will sustain an act as within the limits of legislative authority under the constitution rather than one which will defeat it on the ground that it is an excess or abuse of power."

In the absence of any prohibition of taxation in the constitution of this state there is no limit to the power of the legislature in this respect except such as the necessities of the government may impose or such as may arise from the inherent nature of taxes. It cannot be claimed that taxes can be imposed for other than public purposes and ordinarily they must be uniform.

The only limitation to this power found in the constitution of this state material to this case, is that contained in article ix, § 8 and is as follows: "All taxes upon real and personal estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof." The meaning of this direction is not difficult to ascertain and if any argument were needed to show that if the act in question imposes a tax upon property as such, it comes within this limitation, certainly the elaborate and able argument. of defendant's counsel upon that point is a demonstration of that proposition. If, however, by the proper construction of the act, it imposes a tax or excise upon a specific use of the property it is perhaps equally clear that it is not within the limitation and is in conformity with the constitution as settled by uniform practice since the organization of the government of the state. The uniformity required

in a tax upon use or business is satisfied by its being assessed upon all business of a like kind.

Thus the real question at issue is the proper interpretation of the act, or more properly, will it fairly bear the construction necessary to make the tax one upon the business?

Such is the variety and extent of meaning attached to the word tax or taxes that no argument either way can be drawn from its use. It has been at different times applied to nearly if not quite every burden imposed upon persons, property or business for the support of government and in acts for raising a revenue for public purposes it seems to be used as meaning the same thing as impost, duty, or excise.

The method by which the burden is imposed though not conclusive, has a significant bearing upon the meaning and purpose of the act. It is not levied as property taxes usually are. There is no given sum to be assessed in which the percentage is fixed by valuation but the percentage is fixed by law leaving the amount to be ascertained by the valuation.

But what is of more importance is the kind of property selected for valuation. It is not all the property which the company may have, but only such as is used in the telegraph business. It is the telegraph line, with a detailed statement of such articles as constitute that line, or are necessary to its operation. No real estate is specified, no other property, however convenient it might be, or however much the company might own or may acquire, can be included in the valuation. This tax then is virtually imposed upon that which stands for the capital stock or rather upon the use of the property and upon the use of that which in some degree represents the extent of its business. It is that which is invested in the business and exclusively used for carrying it on, and may fairly be used as a test of the extent of the business for the purpose of fixing the amount to be paid for that business.

Further, while it is the property used which is valued, it is only while it is in use for this business. The moment the use for the specified purpose ceases, that moment the tax ceases. It is assessed upon telegraph corporations, companies and persons

doing that business. The business is a necessary incident to the tax; without it the tax falls and ceases to be. The corporation is assessed not because it is a corporation, but because it carries on that particular business, and the amount of that assessment is not a given sum, but ascertained by a valuation put upon that which it uses in that business. In a word the corporation is assessed because it is engaged in that particular business and the amount of the assessment is ascertained by the value of the property exclusively used for that business. This may not be the most accurate way of fixing the amount of business done, but it is substantially the method often adopted for that purpose; the object of the act is the material thing and not the particular means by which it is to be attained.

But the means used do not stop here. It is not the property alone which is valued. "Any circumstances or conditions which affect the value of the property" are to be taken into consideration. We cannot assent to the proposition of counsel that this provision is without meaning. It is rather of very significant meaning if not conclusive as to the intention of the statute. It is a part of the act and cannot be ignored. These circumstances and conditions are not of the property, though incidental to it.

They may or may not add to its inherent value but they are of the highest importance as an element in the value of the use to which it is put as fixing the amount to be paid for that use. A portion of the property is fixed and cannot easily be moved from place to place. Its value must therefore very much depend upon its situation. A telegraph line as such, whatever the cost of erection, would be of very little value extending through a country without inhabitants or business. So its connection or want of connection with other lines, the competition or want of it from rival lines are circumstances very materially affecting its value, and the fact that these things are to be considered, show plainly that this is not a tax upon the property, but upon its use and capacity to earn money.

Thus it would seem that if the act in question is susceptible of an interpretation as laying a tax upon property, a fair construction of its terms leads us still more forcibly to the conclusion

that such was not the intention of the legislature, but that its purpose was to levy a tax upon the use or business of the company and that in reality such is the tax imposed.

In conformity with these views, we think will be found all or nearly all the cases to which our attention has been called.

In *Portland Bank* v. *Apthorp*, 12 Mass. 252, a tax of one per cent. per year upon the capital stock of all the banks, was called in question as beyond the constitutional power of the legislature. The constitution under which the act was passed was similar in effect so far as material to this case as ours. The same objection as here was made that it was a tax upon property and lacked the necessary uniformity. But the court not denying that the capital stock was property, as it could not, sustained the tax as one upon the franchise and not upon the property of the bank.

In *Commonwealth* v. *Hamilton M'f'g Co.* 12 Allen, 298, a tax was assessed upon the excess of the market value of all the capital stock of the company over the value of the real estate and machinery taxable in the town where situated. Here as in the case at bar the amount of the tax was fixed by the value of a certain portion of the property of the company. Again the court not denying that the amount of the tax depended upon the value of certain property, held that the tax could not be sustained as a property tax for the want of uniformity and that it is not "proportional" but that there was nothing "in the nature of the assessment, or in the manner in which it is imposed, or in the method prescribed for ascertaining the amount which each corporation is to pay, which renders the act under which it is imposed invalid and unconstitutional as authorizing an excise or duty on the franchise or privilege of corporations," and as such the act was sustained. The same case was heard and affirmed in United States Court, 6 Wallace, 632.

In *Commonwealth* v. *Five Cents Savings Bank*, 5 Allen, 428, the tax in question was levied by the legislature upon the average amount of deposits for a specified time. That the deposits are a part of the property of the bank cannot be disputed, though

it is that class of property which tends to show the amount of business done.    While this tax could not be sustained as a tax upon property, though the amount was ascertained by the value of property, it was sustained as a duty upon the franchise.    To the same effect are *Commonwealth* v. *Provident Ins. for Savings*, 12 Allen, 312 ; S. C. 6 Wallace, 611 ; *Society for Savings* v. *Coite, Id.* 594.    In these cases the question involved in the case at bar has been so fully discussed as to leave nothing to be added.

Similar taxes have been imposed upon savings banks and other corporations in our own State, and in most instances have been paid without objection, not because it is a tax upon property, but rather upon the business or franchise.    This question was somewhat discussed in *Jones* v. *Winthrop Savings Bank*, 66 Maine, 242.    In that case the tax was ascertained by the average deposits.    It was there held that the tax could not be sustained as one upon property, but was upon the franchise, and that therefore when the bank ceased to do business as such, the tax ceased though the deposits remained.    Also that the deposit did not pay the tax, "though it may materially affect the amount to be paid." So in the case at bar, the corporation is assessed without regard to the amount of property it owns, but the amount depends upon the value of certain property, with the "circumstances or conditions which affect that value."

In 1874, the legislature of this State passed an act, c. 258, of the acts of that year, assessing a tax upon railroad corporations. The amount of the tax was to be ascertained by an estimate of the cash value of all the shares constituting the capital stock of such corporation, which was enacted to be the true value of its corporate franchise " for the purposes of this act."    From this was to be deducted the value of certain property subject to local taxation and the proportional part of the line beyond the limits of the State.    Upon the balance thus obtained, the corporation was to pay a tax of one and one-half per cent. "upon its corporate franchise."    In this act it is directly stated that the tax is upon the franchise.    But the name is not material.    It is the nature of the tax imposed which settles the question as to its validity.    If

the tax is upon the property as such, it is illegal by whatever name we may christen it. If upon the franchise it is clearly within legislative power, though the name be omitted and though the value of the franchise may be ascertained by an estimate of certain property. Now it is clear that the shares of a corporation are property, and just as clear that their value is not a certain test of the value of the franchise, except as they are arbitrarily made so "for the purposes of this act." In this act and in the one in question, the tax is assessed upon the same principle, and the amount is ascertained by the same method, the valuation of certain specific property. It would seem that if the one is within the legislative power the other must be also. If there is any difference the advantage must be in favor of that now in question, for that does require a valuation of "circumstance or conditions" which are not property, but must relate to the business of the company, while the railroad act requires the valuation of property only. The constitutionality of this act assessing railroad corporations was before the court in *State* v. *M. C. R. Co.* 66 Maine, 488. It was there sustained. It is true the same objection was not made that it was a tax upon property that is now raised. But if the objection is valid, it may well excite surprise, that it was overlooked both by the court and the eminent counsel engaged in the defence.

Under the conclusion to which we are brought, that the tax is one upon the business of the defendant corporation, and not upon its property, many of the objections raised do not apply, which otherwise would require serious attention. Our constitution imposes no restriction upon the legislature in imposing taxes upon business. In this respect it differs from that of New Hampshire and some other states, where it is required that all taxes shall be " proportional and reasonable," and for that reason, some of the cases cited do not apply. It is undoubtedly true that all taxes whatever the form they take, must be for a public purpose. It requires no provision in the constitution to prevent their being levied for any other.

It is objected in this case that the distribution of this tax as provided in the act, shows that it is not for a legitimate purpose.

What distribution was contemplated is somewhat difficult, perhaps impossible to ascertain from the act itself. If it is all to go to the towns, it would still be a public purpose. But that is a matter which is not now involved. The tax is imposed by the State. It is to be paid to the state treasurer as other public funds. It then becomes a public fund to be used for a public purpose. If diverted from that, the remedy is not by a refusal to pay. If the last section of the act should prove to be in violation of the constitution, or void for uncertainty, it does not affect the remainder. This is not a case where one district is required to pay a tax for the support of another. It is like other excise taxes raised in any part of the State to be appropriated by the State wherever its needs or its sense of justice may require.

The exemption of the corporate property from further taxation, is a matter of which this defendant can hardly complain. But if so, it is a clause which in the same or similar form is inserted in all or nearly all the acts of this character, and is so inserted as a matter of justice to the party, and for the very purpose of equalizing the taxes assessed. We are not aware of any provision of the constitution which is violated by it.

*Judgment for the State, $2500 and interest since September 1, 1880.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and SYMONDS, JJ., concurred.