(Decided 21st June, 1887.)

THE STATE OF MARYLAND *vs.* THE CENTRAL SAVINGS BANK OF BALTIMORE.

*Construction of Act of 1874, ch. 483, sec. 85—Taxation of Deposits in Savings Banks invested in Ground rents—Distinction between a Tax on the Property, and a Tax on the Franchises of Such Banks.*

The Act of 1874, ch. 483, sec. 85, provides that "The President or other proper officer of any Savings Bank, institution or corporation which shall receive deposits and allow interest thereon, shall furnish to the Comptroller on or before the first day of July in each year, the aggregate amount of deposits in such corporation; and shall pay to the treasurer on or before the first day of January succeeding, out of the interest due the depositors, the State tax on such deposits." HELD:

State *vs.* Central Savings Bank of Baltimore.

1st. That the deposits of a Savings Bank, invested in ground rents, reserved under leases for ninety-nine years renewable forever, on property which by the law of Maryland is assessed to, and the taxes thereon paid by, the leasehold owner, are not within the operation of this Act.

2nd. That in view of the decision in *State vs. Sterling*, 20 *Md.*, 502, the tax imposed by said Act is in effect a tax on property held by the Bank in trust for its depositors; and to hold that the deposits invested in ground rents are liable to the payment of this tax would be to subject the same property to double taxation, which is forbidden by the State Constitution.

3rd. That the terms of said Act, which was passed after the decision in *State vs. Sterling*, being identical with those construed in that case, it must be presumed that the Legislature in passing this Act meant and understood it, in the same sense in which the prior Act had been interpreted.

4th. That in so deciding this Court is not to be understood as concurring with the Court in the construction placed upon the Act, in *State vs. Sterling*. The taxes imposed by the Act in that case, and the taxes assessed by the Act of 1874, are not, in the opinion of this Court, taxes on the property of Savings Banks held by them in trust for depositors, but taxes on the franchises which such institutions enjoy through the favor of the State.

5th. That this Court would hold that the deposits of Savings Banks invested in ground rents are not exempt from the operation of the Act of 1874, but for the fact that the Act was passed after the decision in *Sterling's Case*, upon the construction of a prior Act identical in terms with the Act of 1874. If by the latter Act, the Legislature meant to tax the deposits, whether invested in non-taxable securities or ground rents on which taxes were paid by the leasehold owner, this intention, in view of the decision in *Sterling's Case*, ought to have been expressed in clear and explicit terms.

APPEAL from the Superior Court of Baltimore City.

This suit was brought by the State to recover from the Central Savings Bank of Baltimore, certain State tax on the deposits of the defendant invested in ground rents; such tax being claimed under the Act of 1874, ch. 483. The case was tried before the Court, (PHELPS, J.,) without

the aid of a jury, and judgment was given for the defendant. The plaintiff appealed.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*Joseph B. Seth,* and *Charles B. Roberts, Attorney-General,* for the appellant.

*W. George Weld,* and *Arthur George Brown,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This suit is brought to recover the tax assessed by the Act of 1874, chap. 483, which in sec. 85, provides:

"The president or other proper officer of any Savings Bank, institution or corporation which shall receive deposits and allow interest thereon, shall furnish to the Comptroller on or before the first day of July in each year, the aggregate amount of deposits in such corporation; and shall pay to the Treasurer on or before the first day of January succeeding, out of the interest due to the depositors, the State tax on said deposits."

The question is whether the deposits of the appellee invested in ground rents, reserved under leases of ninety-nine years renewable forever, on property, which, by the law of this State is assessed to, and the taxes thereon paid by, the leasehold owner, are within the operation of this Act. The contention is that the tax thereby imposed is in effect a tax on property held by the appellee in trust for its depositors, and to hold that the deposits invested in ground rents are liable to the payment of this tax, would be to subject the same property to double taxation, which is forbidden by the State Constitution. And in view of the decision in *State vs. Sterling,* 20 *Md.,* 502, this contention is, we think, well founded. The pre-

cise question arose in that case upon the construction of the 95th sec. of Art. 81, of the Code, which in terms is identical with Act of 1874 ; and the Court being of opinion that the tax thereby assessed, was a tax upon the property of the institution, decided, 1st. That the deposits invested in Government securities, which by the Act of Congress were exempt from State taxation, were not within the operation of the law ; and 2ndly. That the deposits invested in shares of stock or other funds, upon which taxes were paid by the corporation, or other persons, were not subject to the payment of the tax imposed by the Act, because to hold otherwise would subject the same property to double or unequal taxation. This decision was made in 1867, and in passing the Act of 1874, identical in terms with the Act thus construed by the Court, we must presume the Legislature meant and understood it, in the same sense in which the prior Act had been interpreted construing the Act of 1874. Then according to the intention of the Legislature, as thus ascertained, we must hold that the deposits of the appellee invested in ground rents, the taxes on which have been paid by the leasehold owner, are not within the operation of the Act of 1874. In so deciding, however, we are not to be understood as concurring with the Court in the construction placed upon the Act in *Sterling's Case.* With due deference, the tax imposed by that Act on the deposits in Savings Banks, is not, in our opinion, a tax on *the property held by such Banks in trust for the depositors.* It is not a tax on the property nor upon the investments held by the Bank ; nor is it a tax levied on each deposit at a certain rate in proportion to its amount, but it is assessed on the amount of all deposits in the Bank ascertained and fixed by the average sums which it has had in its hands, during the six months preceding a specified day. It is nothing more or less than a *tax on the Bank itself,—upon its franchises,* and assessed in consideration of the privileges thus conferred by

the State.    The average deposits during a  specified time
are but a measure of the extent to which such institutions
have exercised their franchises, and furnishes the basis by
which the amount to be paid may be computed.    It can
hardly be necessary to say that the franchises conferred on
Savings Banks are important and valuable, and there is
no reason why such institutions should not bear their pro-
portion of the public burdens.  The depositors who through
the exercise of such franchises enjoy all the advantages
and benefits derived from large investments, which the
aggregate deposits enable these banks to make, surely
have no right to complain.    "Nothing can be more cer-
tain in legal decision," say the Supreme Court, "than
that the property and franchises of a private corporation,
and all trades and avocations by which the citizen ac-
quires a livelihood, may be taxed by a  State for the sup-
port of the State government."    And, if Savings Banks
can avoid the operation of the Act of 1874 by investing
the deposits in non-taxable securities, or in ground rents,
the taxes on which are paid by the leasehold owner, it is
easy to see they may escape altogether the tax imposed
by the Act.

Nor do we see the force of the argument that in direct-
ing the tax to be paid out of the interest, due to depositors,
it thereby becomes a tax on property.  Savings Banks
are not Banks of discount, nor have they any capital
stock.    The interest, therefore, due the depositors is de-
rived solely from the use or investment of deposits, and any
tax imposed on such Banks, must necessarily, to some ex-
tent, diminish the interest to be received by depositors,
and may be said therefore to be paid out of the interest
due to them.    So the tax imposed by the Act in *Sterling's
Case,* and the tax assessed by the Act of 1874, are not in
our opinion taxes on the property of Savings Banks held
by them in trust for depositors, but a tax on the fran-
chises which such institutions enjoy through the favor of

the State. And so the Supreme Court in *Society for Savings vs. Coite*, 6 *Wall.*, 594, and *Provident Inst. vs. Commonwealth of Massachusetts*, 6 *Wall.*, 611, have decided. In the former case, the question arose upon an Act passed by the Legislature of Connecticut, which required the several Savings Banks of that State, to pay annually to the Treasurer a sum equal to three-fourths of one per cent. on the total amount of deposits on the 1st day of July, in lieu of all other taxes. In that case as in this, it was contended that the tax thus imposed was a tax on the property of such Banks, and that the deposits invested in government bonds, which were by the Act of Congress exempt from State taxation, were not subject to the tax thereby assessed. But a majority of the Supreme Court, affirming the decision below, held that the tax was not a tax on the property, but on the franchises of the Bank, and that the defendant corporation had no right to claim exemption therefrom, to the extent of its deposits invested in non-taxable securities of the United States. A like construction was placed on an Act of the Legislature of Massachusetts which required the tax to be paid "on *account of the depositors*," which is substantially the same as the Act of 1874, which provides the tax shall be paid *out of the interest due the depositors.* *Provident Inst. vs. Mass.*, 6 *Wall.*, 611.

Entertaining these views, we should hold that the deposits of the appellee invested in ground rents are not exempt from the operation of the Act of 1874, but for the fact that the Act was passed after the decision in *Sterling's Case*, upon the construction of a prior Act identical in terms with the Act of 1874. If by the latter Act, the Legislature meant to tax the deposits, whether invested in non-taxable securities, or ground rents on which taxes were paid by the leasehold owner, this intention, in view of the decision in *Sterling's Case*, ought to have been expressed in clear and explicit terms.

The decision in *Mayor, &c., of Baltimore vs. Canton Company of Baltimore,* 63 *Md.,* 218, rests altogether on different principles. It was decided under the Act of 1880, chap. 20, which required that the real estate belonging to corporations should be valued and assessed to such corporations, and that the taxes thus levied should be paid by them, and that the Tax Commissioners should deduct the assessed value of such real property from the aggregate value of the shares of stock. The Canton Company, being the owner of certain ground rents, claimed that the value of the ground rents should be deducted from the assessed value of its shares of stock. But the Court said no, under our forms of leases for ninety-nine years renewable for ever, the law treats the tenant as owner, and the taxes levied on the premises are assessed to and paid by him. The Act of 1880 allows deductions only for real estate owned by and assessed to the corporation, and on which it pays taxes. "Those corporations only," say the Court, "are to be regarded as owners of real estate, the valuation of which is to be deducted from the valuation of their stock, to whom the land is directly assessable, and who are primarily chargeable with the taxes thereon."

*Judgment affirmed.*

(Decided 21st June, 1887.)

ALVEY, C. J., filed the following opinion:

I fully concur in the affirmance of the judgment of the Court below, and for the reasons assigned by the learned Judge of that Court, as we have them set out in the record. I am opposed to overruling the case of *State vs. Sterling,* 20 *Md.,* 502, and, in this case, it is wholly unnecessary to the conclusion reached. That case was very fully and ably argued, and it appears to have been carefully considered by the Court. It involved simply the construction of a local revenue statute of our own State, and I can see no propriety in overruling the decision

State *vs.* Central Savings Bank of Baltimore.

there made, because decisions may be found elsewhere founded upon different views or theories of Courts, in the construction of language employed in statutes somewhat, though in no case exactly, similar to that employed in our statute. The cases in 6 *Wall.*, 594, and 611, relied on as maintaining a different view from that in *State vs. Sterling*, were cases decided upon the reasoning and authority of preceding decisions made in the States from whose Courts the cases in 6 *Wallace* were taken; and in those cases the Judges of the Supreme Court were nearly equally divided in opinion; the CHIEF JUSTICE, Mr. Justice GRIER and Mr. Justice MILLER dissenting, they being of opinion that the tax there in question was, by force of the terms of the statutes, imposed upon property, and not the franchises of the corporations. Whenever the Legislature may intend to distinguish as between a property tax and a tax on a franchise, it is certainly a very easy thing to indicate its intention by the use of plain words; and clearly the language of the statute before us furnishes no evidence that the Legislature had in mind a franchise as distinguished from a property tax, in the enactment of the statute. In the case of *State vs. Sterling* substantially the same language as that here presented was held to impose a property tax, and I perceive no sufficient reason for questioning that decision. Moreover, in my judgment, in cases of mere local law, like the present, it is indispensable to the due administration of justice, that a question once deliberately examined and decided by the Court of last resort, should be considered as settled, and closed to further argument; or otherwise there can be no reliance upon decisions, or termination of disputed questions.

(Filed 23rd June, 1887.)


BRYAN, J., filed the following opinion:

The requirement of the Act of 1874, chapter 483, section 85, is that the president or other proper officer of a

Savings Bank shall pay to the Treasurer "out of the interest due the depositors, the State tax on said deposits." The language is certainly clear and free from all ambiguity. The subject-matter on which the tax is levied is stated to be the deposits, and the payment is to be made out of the interest due the depositors. The Savings Bank holds the deposits for the benefit of those persons who placed them in its keeping. They are the real owners of the sums deposited. The statute simply directs that the State tax on these sums shall be paid out of the money of the persons to whom the deposits belong. If there were any doubt about the meaning of these words, it would be removed by the latter clause of the section in question. It is as follows: "and they shall likewise furnish to the County Commissioners or Appeal Tax Court, as the case may be, of the county or city where said corporation is situated, a list of the depositors in said institution, with the amount deposited by them at the time of the annual meeting of those bodies, for levying county or city taxes, or shall agree with the County Commissioners or Appeal Tax Court to pay taxes on such amount of deposits as may be agreed upon between them and the said County Commissioners or Appeal Tax Court, without resort to the individual depositors." The County Commissioners or Appeal Tax Court, as the case might be, were to receive a list of the depositors, and the amounts of their deposits, so that they might resort to them for payment of the county or city taxes; unless a satisfactory adjustment should be made by the Savings Bank in discharge of the individual depositors. The section which we are considering is found in the General Revenue Law of the State of Maryland; and it was the object of this law, as we learn from its second section, to tax all the property within the State, except such as was exempted by the third and fourth sections. The tax was laid on the deposits in Savings Banks. It is

not supposed that any one would attempt to draw a distinction between the deposits and the property in which they are invested. As was said by the Supreme Court in the *Bank Tax Case*, 2 *Wallace*, 208: "It is not easy to separate the property in which the capital is invested from the capital itself. It requires some refinement to separate the two thus intimately blended together. The capital is not an ideal, fictitious, arbitrary sum of money set down in the articles of association; but, in the theory and practical operation of the system, is composed of substantial property, and which gives value and solidity to the stock of the institution. It is the foundation of its credit in the business community. The Legislature well knew the peculiar system under which these institutions were incorporated, and the working of it; and when providing for a tax on their capital at a valuation, they could not but have intended a tax upon the property in which the capital had been invested. We have seen that such is the practical effect of the tax, and we think it would be doing injustice to the intelligence of the Legislature to hold that such was not their intent in the enactment of the law." The remarks which I have quoted were made in reference to Banks of issue and deposit; but they show very clearly the identity of the deposits in a Savings Bank with the property in which they are invested. If such property is exempt from taxation, the deposits must be exempt. This is the decision of this Court in *State vs. Sterling*, 20 *Md.*, 502. If such property has once paid the taxes duly levied, it would be in violation of the Declaration of Rights to levy them again on the deposits.

The record shows that the deposits on which taxes are claimed in this suit are invested in ground rents in the City of Baltimore, reserved on leases for ninety-nine years renewable forever; and that the respective tenants of the leasehold interests in the lots of ground on which the

rents are reserved have paid taxes on the fee simple value of the land. It is very usual in the City of Baltimore for an owner of land in fee simple to lease it for ninety-nine years with a right of perpetual renewal in the tenant; and it is customary to stipulate that all taxes on the whole fee simple value of the land shall be paid by the tenant. The full taxes are paid on the property and the agreement for paying them is mutually satisfactory to landlord and tenant. As a matter of course a larger rent would be exacted from the tenant, if he were not required to pay the taxes. If the owner of land were to lease it for one year, and to stipulate that the tenant should pay the taxes, the tenant would not be willing to pay his landlord as large a rent, as if the latter should pay the taxes. Precisely the same reason applies where the leases are for ninety-nine years with the right of perpetual renewal. In both instances the landlord in reality and effect pays the taxes on the property. It would be as unjust to tax the rent received in one case as in the other. When the landlord sells his interest in the land, which is the reversion in fee with the rent as incident thereto, the purchaser from him occupies exactly his position. He knows that he is purchasing fee simple property, on which for valuable consideration, another person has contracted to pay the taxes. His right to have these taxes paid by the tenant is something which he buys and pays for, and which belongs to him as completely and justly as the coat which he purchases from his tailor, or the barrel of flour which he buys from his grocer. It will be seen that the ground rent measures the landlord's interest in the property; and the taxes on this, and on every other interest in it (that is to say the entire fee simple value) are paid by the tenant. Now these ground rents in question are absolutely identical with the deposits with which they were purchased, and as a matter of course the deposits cannot be taxed, when the ground rents have paid the taxes.

State *vs.* Central Savings Bank of Baltimore.

We have been referred to *Society for Savings vs. Coite,* and *Provident Institution vs. Massachusetts,* both reported in 6 *Wallace.* Three of the eight Judges of the Supreme Court who heard these cases, dissented from the opinions delivered. The decisions affirm the judgments of the highest Courts of the States from which they came. It may be useful to make some examination of these cases. In *Coite's Case* certain statutes of Connecticut were construed. These statutes required Savings Banks and Societies for Savings to pay to the Treasurer of the State a sum equal to three-quarters of one per cent. on the total amount of deposits in such institutions on the first day of July in each year, and this tax was declared to be in lieu of all other taxes upon said institutions and the deposits therein. It appeared that a large amount of the deposits of the Society for Savings had been invested in securities of the United States. If the tax in question was regarded as laid on the property of the Savings Society, it was conceded that it was void so far as it affected the deposits invested in United States securities. The Court held that it was imposed on the corporation and not on its assets ; that it was imposed on the Bank in consequence of its doing under favor of the State, certain business which that favor rendered profitable ; that it was an equivalent exacted in the payment of a tribute in return for privileges conferred. It was further said : "It is hardly more a tax upon property than would be a contribution demanded by a military commander of a captured city, as the price of his protection." It was therefore held that the deposits invested in United States securities were subject to the tax. *Coite vs. Society for Savings,* 32 *Connecticut,* 173. Whatever may be thought of this decision, it was afterwards declared by the same Court that it went "to the verge of the law." *Nichols vs. New Haven, &c.,* 42 *Conn.,* 103. Some expressions in the opinion of the Court could hardly be considered as in harmony with the views of tax-

ation entertained in this State. They say that "taxes are at the best arbitrary and unequal;" and they speak of "this kind of legislation" (meaning on the subject of taxes), as "arbitrary, partial, cumulative and capricious." And we may suppose from the argument of the counsel who sustained the validity of the tax, that there is a great diversity between the system of taxation in Connecticut, and our own. He is reported as saying "that except as prohibited by the Constitution of the general government, the Legislature of this State possesses the sovereign and absolute power of taxation, and that the remedy for unequal, unjust or oppressive taxation is wholly legislative and not at all judicial."

The case of the Provident Institution arose in Massachusetts. The decision of the Supreme Court of the State is reported in 12 *Allen*, 312; but the Court refer to and adopt their previous opinion in *Commonwealth vs. People's Five Cents Savings Bank*, in 5 *Allen*, 428. A statute required every Savings Bank to pay to the Treasurer of the commonwealth a tax on account of its depositors of one-half of one per cent. per annum on the amount of its deposits, to be assessed, one-half of the tax on the average amount of its deposits for the six months preceding the first day of May, and the other half on the average amount of its deposits for the six months preceding the first day of November. And it provided that, if in default, the corporation should be liable to an action of contract for the amount of the tax; and that it might be enjoined from the exercise of its franchise until all taxes were paid. The Court held that if regarded as laying a tax on money in the hands of the corporation belonging to depositors, the statute would be contrary to the Constitution of Massachusetts; but that if it could be regarded as an excise or duty levied on the privilege or franchise of the corporation, it would be valid. It said that it would not declare the statute to be a violation of the funda-

mental law, unless its invalidity was established beyond a reasonable doubt; and on consideration, it decided that it was valid. It was held that the tax was not levied on each deposit at a certain rate in proportion to its amount; but was designed to be a corporate charge. 5 *Allen,* 433 In the opinion in 12 *Allen,* it is said that the tax is not on the property belonging to, or held by the corporation, but is in the nature of an excise or duty on its franchise, or the right granted to it by the Legislature to use, exercise and enjoy corporate privileges.

It will be seen that the statutes which have been mentioned differ in some material respects from ours. But if they were identical, I think it would be our duty to maintain the law as decided by our own Court. The decision in *State vs. Sterling,* meets with my entire approval. In no portion of the Act of 1874, chapter 483, do the Legislature use terms which indicate a purpose to require payment of money for the privilege of carrying on business either by an individual or a corporation. By other statutes, however, licenses are required for various descriptions of business. Savings Banks have no peculiar or exclusive privileges. They receive money and lend it out for the benefit of the depositors, without any profit to the corporations. Their whole purpose is in the highest degree beneficent. Any private individual is at liberty to devote his time and labor to the public good in the same way, if he feels disposed to do so. A tax on the franchise of a Savings Bank may be laid by statute; that is to say a tribute may be exacted for the privilege of existing, and exercising its functions. It is for the Legislature to decide whether this shall be done. But in all discussions on this subject, it is well to bear in mind the wise and weighty words of the learned *Cooley*: "A tax on a corporate franchise may or may not be just or politic. If the business is one of which corporations have a monopoly, a tax on their franchises, however heavy, would not be burdensome, be-

cause the result would only be to add to the cost of whatever the corporations supplied to the public, so that the tax would really be paid by the community at large. If, on the other hand, the business is one open to free competition between corporations and individuals, and in respect to which corporations would enjoy no especial privileges or advantages, a tax upon the privilege of conducting the business under a corporate organization would be wholly unreasonable and unjust." *Cooley on Taxation*, 34.

(Filed 7th November, 1887.)