HOMER E. ROBINSON,
BANK COMMISSIONER OF THE STATE OF MAINE

*vs.*

FIDELITY TRUST COMPANY,
IN RE PETITION OF THE STATE OF MAINE.

Cumberland.    Opinion, April 21, 1944.

*Frank I. Cowan,* Attorney General,

*John O. Rogers,* Assistant Attorney General, for the petitioner.

*Cook, Hutchinson, Pierce & Connell,* for Robert Braun, Conservator of Fidelity Trust Company.

SITTING: STURGIS, C.J., THAXTER, HUDSON, MANSER, MURCHIE, CHAPMAN, JJ.

STURGIS, C.J.    In this proceeding in equity brought by the Bank Commissioner under Public Laws 1933, Chapter 93, known as the Emergency Banking Act, by decree of the Supreme Judicial Court of March 18, 1933, a conservator pending hearing was appointed for the Fidelity Trust Company of Portland, a state trust and banking company, who, as ordered, forthwith began its liquidation, and, the appointment having on April 13, 1933 been confirmed and made permanent, the liquidation has continued without interruption and is still in progress. The State of Maine, by petition, here presents a claim for a tax assessed against the Fidelity Trust Company on May 15, 1933 and prays that it may be allowed and ordered paid by the conservator out of assets remaining in his hands. The claim being resisted, by agreement the case is reported for decision, on the legally admissible evidence, as law and equity require.

The tax in controversy was assessed against the Fidelity Trust Company by the State Bureau of Taxation on May 15, 1933 and as the semi-annual assessment for the first six months of that year one-half of the annual tax upon the bank provided

by R. S., c.12, §§ 72-75 as modified by P. L. 1931, c. 216. In Section 72, as modified, every domestic incorporated trust and banking company is required semi-annually on or before the first Saturdays of April and October to make returns, signed and sworn to by its treasurer, to the Bank Commissioner of the average amounts of its time and interest bearing deposits for the six months preceding the last Saturdays of March and September together with statements of its deductible assets and investments with their par value, cost and book value, and it is the duty of the Bank Commissioner within thirty days thereafter to determine the cost and value of the assets and investments and transmit the same with the returns to the Bureau of Taxation. In Section 73, as modified, it is provided that the Bureau of Taxation shall thereupon deduct from the average amount of the deposits returned an amount equal to the cost and value, so determined, of the deductible assets and investments and upon the balance found assess an annual tax of one-half of one per cent; "one-half of said tax shall be assessed on or before the fifteenth day of May on the balance of said deposits so ascertained for the six months ending on and including the last Saturday of March, and one-half on or before the fifteenth day of November on the balance of said deposits so ascertained for the six months ending on and including the last Saturday of September." It is then made the duty of the Bureau of Taxation to certify the assessments to the State Treasurer and he to forthwith notify interested trust and banking companies and the taxes so assessed become payable within ten days after the fifteenth days of May and November. In Section 74 the deposits upon which the taxes are based are exempted from municipal taxation. In Section 75, as modified, if a trust and banking company fails to make the required returns, the Bureau of Taxation is directed to assess the tax upon it on such valuation as is thought just and the assessment is final.

The tax is not a property tax but is an excise imposed upon

the right of the bank to exercise the privileges of its franchise. The excise is not laid upon the property of the bank, or its deposits, or on the business which the bank transacted during the given periods, but upon the value of its franchise when the tax is assessed, that is, its capacity to then transact its business and enjoy the privileges granted by its charter, measured, if the returns are made, by the standard of its average deposits less allowable deductions for the six months preceding the designated dates, and measured, if the returns are not made, by the valuation placed upon it by the Bureau of Taxation. *Jones* v. *Winthrop Savings Bank,* 66 Me., 242; *Provident Institution* v. *Massachusetts,* 6 Wall, 611, 18 L. Ed., 907; *Society for Savings* v. *Coite,* 6 Wall, 594, 18 L. Ed., 897; *Shippee* v. *Commercial Trust Co.,* 115 Conn., 313, 161 A., 781; *Greenfield Savings Bank* v. *Commonwealth,* 211 Mass., 207, 97 N. E., 927; *Com.* v. *Lancaster Savings Bank,* 123 Mass., 493; *Com.* v. *The People's Five Cents Savings Bank,* 5.Allen (Mass.) 428; *State* v. *Central Savings Bank,* 67 Md., 290, 10 A., 290, 11 A., 357; *State* v. *Bradford Savings Bank and Trust Company,* 71 Vt., 234, 44 A., 349, 102 A. L. R., 62,n. The imposition of a franchise tax of this kind is lawful in this State. *Opinion of Justices,* 102 Me., 527, 66 A., 726.

As a reading of the statute discloses the semi-annual taxes on trust and banking companies, by express mandate, *shall be assessed on or before* the fifteenth days of May and November. A tax cannot be said to be assessed until the amount is made certain. If returns are made by the bank certainty does not lie in the returns as and when made but in the amounts of the balances of its average deposits for the designated periods as and when they are found by the Bureau of Taxation after deducting the cost and value of enumerated assets and investments as determined by the Bank Commissioner. If no returns are made the amount of the tax is determined by the valuation fixed by the Bureau of Taxation and cannot rest on the returns. This statute differs materially from those which impose similar

franchise taxes based solely on the returns of the bank and fail to expressly provide when the assessment shall be made. Under such statutes by construction the days when the returns are or should be made are deemed to be the dates of the assessments of the taxes and of their existence as subsisting debts. (Me.) P. L. 1875, c. 47, § 1, *Jones* v. *Winthrop Savings Bank,* supra; (Mass.) *Sts.* 1862, c. 224, § 4 et seq, *Com.* v. *The People's Five Cents Savings Bank,* supra; (Conn.) *General Statutes,* §§ 1285-1287, *Shippee v. Commercial Trust Co.,* supra. As to the time of the assessment, the statute is analogous to that which requires corporations generally to pay annual franchise taxes and fixes the date *on or before* which the taxes shall be assessed. R. S., c. 12, § 21 et seq. It has been decided that such taxes are assessable only *as of* the designated date and then only become debts of the corporation. *Johnson* v. *Johnson Bros.,* 108 Me., 272, 80 A., 741, Ann. Cas., 1913 A., 1303. We think that a similar rule of construction should prevail here and it must be held that under R. S., c. 12, § 72 et seq the semi-annual taxes on trust and banking companies are assessable *as of* the fifteenth days of May and November, and then only become debts of the banks.

If a bank is, voluntarily or otherwise, restricted but allowed to remain in the hands and under the management of its officers and otherwise exercise and enjoy its chartered rights and privileges it is liable for a tax assessed upon its franchise during that period. *Maine* v. *Waterville Savings Bank,* 68 Me., 515; *Com.* v. *Barnstable Savings Bank,* 126 Mass., 526; *Shippee* v. *Riverside Trust Company,* 113 Conn., 661, 156 A., 43; *People* v. *Holland Trust Company,* 123 N. Y. S., 935. However, by the clear weight of authority, if a corporation is placed in the hands of a receiver, ousted from its properties and facilities and deprived of its right or privilege to exercise its franchise, that is, to conduct its own business, neither the corporation nor the receiver is liable for a franchise tax assessed thereafter. The rule has prevailed where a bank was so taken over by the bank com-

missioner without court proceedings. And it has been applied regardless of whether injunction issues or dissolution has taken place, and even though the receiver is temporary and there is a possibility that the corporation may be re-organized and resume its functions. *Jones* v. *Winthrop Savings Bank,* supra; *Johnson* v. *Johnson Bros.,* supra; *Shippee* v. *Commercial Trust Company,* supra; *Bassett* v. *Merchants Trust Company,* 115 Conn., 364, 161 A., 785; *Com.* v. *Lancaster Savings Bank,* supra; *Greenfield Savings Bank* v. *Commonwealth,* supra; *State* v. *Bradford Savings Bank and Trust Company,* supra; *Michigan Trust Co.* v. *Michigan,* 52 F. (2d) 842.

The reported case shows that, while never enjoined, since the decree of March 18, 1933 appointing the conservator, except it has been engaged in winding up its existing fiduciary and representative affairs, neither the Fidelity Trust Company nor the conservator has ever attempted to carry on a banking business. Immediately after qualifying, the conservator, in accordance with decretal orders, took possession of the real and personal property, books, accounts, vouchers and papers of every nature belonging to the bank, ousted its officers from its quarters and the control and management of its business and began liquidation. On April 4, 1933 an assessment of 100%, aggregating one million dollars ($1,000,000), was made upon the stockholders of the bank. On the same day a Special Master was appointed to receive, ascertain and fix all priority claims. By decree of April 13, 1933 the appointment of the conservator was confirmed and made permanent. On May 4, 1933 the Special Master was authorized to receive, pass upon and report all claims against the bank and the time was fixed in which they might be presented or forever be barred. And on May 5, 1933 for the purpose of paying a distributive dividend the conservator was authorized to apply to the Reconstruction Finance Corporation for a loan secured by a pledge of the segregated assets of the bank. This record confirms the stated fact in the report that final liquidation was contemplated and

undertaken as soon as the conservator was appointed and was in progress when the instant tax was assessed. It need only be added that substantially all of the assets of the Fidelity Trust Company have been converted into money and paid out as dividends and it is reasonable to assume that final distribution will not be long delayed.

It is true that under the Emergency Banking Act if it had been found to be for the benefit of the depositors and the public the Fidelity Trust Company could have been re-organized and it may be that this proceeding was begun with the hope or even belief that might take place. The record shows, however, that the Fidelity Trust Company was hopelessly insolvent, no attempt was made to re-organize it, a new bank was formed and it was at once decided that final liquidation was the only alternative. Although Section 11 of the Emergency Banking Act permitted the appointment of a receiver or trustee to liquidate the Fidelity Trust Company in accordance with the provisions of R. S., c. 57 § 52 et seq, it being provided in Section 4 that a conservator might be appointed who should have all the rights, powers and privileges given receivers of banks and trust companies, the Supreme Judicial Court having jurisdiction elected to liquidate the bank through a conservator and it has been recognized that this procedure was authorized, and the conservatorship is governed by the general rules applicable to receivers of trust and banking companies. *Cooper* v. *Fidelity Trust Company*, 132 Me., 260, 170 A., 726.

While the appointment of the conservator did not work a dissolution of the Fidelity Trust Company it suspended its functions and authority over its property and effects. *Cooper* v. *Casco Mercantile Trust Company*, 134 Me., 372, 186 A., 885, 111 A. L. R., 548; *Greenfield Savings Bank* v. *Commonwealth*, supra; *High on Receivers*, Sec. 290; 45 Am. Jur., 116 and cases cited. It deprived the bank of its right and power to exercise the privilege of doing business under its franchise as completely as if injunction had issued or the bank been placed in dissolu-

tion. *Michigan Trust Co.* v. *Michigan,* supra. It had this effect when under his temporary appointment the conservator ousted the bank and took possession. *Bassett* v. *Mercantile Trust Company,* supra. From then on neither the bank nor the conservator can be deemed to have exercised the corporate franchise. *Shippee* v. *Commercial Trust Company,* supra. As was aptly said in *Greenfield Savings Bank* v. *Commonwealth,* supra, "Such a corporation is not subject to an excise tax when it has no right nor power to exercise its franchise and when its franchise is not in fact exercised by anyone in its behalf and interest, even though there is a legal possibility that its corporate functions may be resumed."

It is to be borne in mind that the affairs of the Fidelity Trust Company are in the hands of the conservator as an officer of the court and this controversy is not between this claimant and the bank but between the claimant and the depositors of the bank. There are no superior equities. The law of the case compels the conclusion that the Fidelity Trust Company had been deprived of its right and privilege to exercise its franchise when the excise tax here claimed was assessed and as there was then no foundation upon which the tax could rest it is invalid and cannot be allowed. In view of that decision it is not necessary to discuss, much less to decide, other matters of defense raised and argued on the briefs. The cause is remanded for entry and decree in accordance with this decision.

*So ordered.*