**OPINION OF THE JUSTICES OF THE SUPREME JUDICIAL COURT** given under the Provisions of Section 3 of Article VI of the Constitution.

Supreme Judicial Court of Maine.

Questions Propounded by the Governor in a Communication Dated Nov. 14, 1985.

Answered Nov. 25, 1985.

### COMMUNICATION FROM GOVERNOR PROPOUNDING QUESTION

To the Honorable Justices of the Supreme Judicial Court:

By virtue of the authority conferred upon me by the Constitution of Maine, Article VI, Section 3, and believing that the question contained herein is an important question of law and that it is a solemn occasion;

I, Joseph E. Brennan, Governor of Maine, submit the following statement of facts and question of law and respectfully ask the Opinion of the Justices of the Supreme Judicial Court thereon:

### STATEMENT OF FACTS

On November 13, 1985, the Maine Legislature convened in special session called by the Governor. On that day the House of Representatives and the Senate enacted House Paper 1163, Legislative Document 1661, AN ACT Establishing a Commercial Forestry Excise Tax and Providing an Appropriation for Refunding Maine Forest Fire Suppression Taxes Paid, [Attached hereto as Exhibit A] as amended by Committee Amendment "A" (Filing No. H–486). [Attached hereto as Exhibit B] The Legislature then adjourned *sine die*, [Attached hereto as Exhibits C & D]. The bill now awaits the Governor's signature to become law.

In *Eastler v. State Tax Assessor*, 499 A.2d 921 (Me.1985) the Law Court struck down the Forest Fire Suppression Tax, 36 M.R.S.A. §§ 2711–2714 (Supp.1984–85) be-

cause it was not a lawful excise tax. The practical effect of the *Eastler* decision was to create an unanticipated $13 million obligation of the State of Maine for the current biennium. The Governor called the Legislature into special session and submitted L.D. 1661 to address this serious and immediate problem. The bill, as amended, expressly imposes an excise tax on persons engaged in commercial forestry enterprise. The tax is measured by the commercial forest land used by such persons in commercial forestry enterprise businesses. A person not engaged in commercial forestry is not subject to this tax. The tax is administered by the State Tax Assessor. Enforcement of the tax is accomplished through the same lien and collection procedures as are used under the State's income tax laws. *See* 36 M.R.S.A. §§ 5311–5322 (1978 and Supp.1985–86).

Despite the express language of the bill imposing the tax on the privilege of using land in commercial forestry enterprise there remains legal uncertainty as to whether the Court would characterize this tax as an excise tax. In order to resolve the State's current financial difficulties without further disruption and in order to guard against the imposition of an unlawful tax, I respectfully request your opinion on the following question:

### QUESTION OF LAW

Does Legislative Document 1661 (Exhibit A) as amended by Committee Amendment "A" (Exhibit B), create a lawful excise tax, consistent with the Maine Constitution, on commercial forestry enterprise in the State of Maine?

Respectfully Submitted,

JOSEPH E. BRENNAN
Governor

### EXHIBITS

EXHIBIT A*   L.D. 1661 An Act Establishing a Commercial Forestry Excise Tax and Providing an Appropriation for Refunding Maine Forest Fire Suppression Taxes Paid.

EXHIBIT B*   Committee Amendment A (H–486).

EXHIBIT C*   Certification of the Clerk of the House of Representatives.

EXHIBIT D*   Certification of the Secretary of the Senate.

EXHIBIT E   Engrossed copy of L.D. 1661.

EXHIBIT F*   Opinion of the Attorney General to the Governor regarding the constitutionality of L.D. 1661. Opinion Dated November 9, 1985.

* Not reproduced.

### EXHIBIT E

### STATE OF MAINE

### IN THE YEAR OF OUR LORD NINETEEN HUNDRED AND EIGHTY-FIVE

### H.P. 1163 - L.D. 1661

AN ACT Establishing a Commercial Forestry Excise Tax and Providing an Appropriation for Refunding Maine Forest Fire Suppression Taxes Paid.

Be it enacted by the People of the State of Maine as follows:

Sec. 1. 36 MRSA c. 366, as amended, is repealed.

Sec. 2. 36 MRSA c. 367 is enacted to read:

### CHAPTER 367
### COMMERCIAL FORESTRY EXCISE TAX

*§ 2721. Legislative findings*

*The Legislature finds that engaging in commercial forestry is a privilege that results in costs as well as benefits to the*

State and that persons enjoying that privilege should be subject to the tax imposed by this chapter.

The Legislature further finds that the persons owning 500 acres or more of forest land are typically engaged in commercial forest activity. Historically, that amount of land has been used for administrative efficiency and to delineate the amount of land indicative of management for commercial activity, especially for purposes of the Maine Tree Growth Tax Law and the spruce budworm tax. The activity of growing commercially valuable trees is one which occupies a very long cycle. It is not uncommon that 40 years must pass between the planting of a seedling and the time when the tree will be harvested for commercial use. During that interim, it may at times be difficult to discern any obvious commercial activity taking place on the land. In many instances, the best accepted commercial practice with regard to that forest land is to do nothing other than to allow the trees to follow the natural course of maturation. Experience has shown that it is almost inevitable that a large amount of land containing commercially valuable trees will at some point be harvested for commercial purposes. Owners of such large amounts of land will receive the financial benefit of commercial activity either through the sale of the forest product or through the increased value that the forest product adds to the land when the land is transferred.

§ 2722. Annual tax

An excise tax is imposed upon the privilege of using one's land in commercial forestry enterprise in this State. The tax shall be levied upon owners of commercial forest land and shall be apportioned according to the formula specified in section 2723. The State, municipalities and the Federal Government are not subject to this tax.

§ 2723. Computation of the tax

1. Fiscal years beginning with 1986–87. By September 1, 1986, and annually thereafter, the Commissioner of Conservation shall certify to the State Tax Assessor the amount appropriated from the General Fund by the Legislature for that fiscal year and the amounts of any other receipts of funds as a result of forest fire protection activities, including projected federal funds, actual receipts from municipalities and the unorganized territory pursuant to Title 12, sections 9204, 9205 and 9205–A, for the preceding fiscal year and receipts from sales of vehicles, land and equipment attributable to the preceding fiscal year. The State Tax Assessor shall subtract receipts from other sources from the General Fund appropriation for forest fire control and divide the result by 2. This amount shall be divided by the total number of adjusted acres of commercial forest land, rounded to the nearest 1/10 of a cent and multiplied by the number of adjusted acres of commercial forest land owned by each taxpayer to determine the amount of tax for which each owner of commercial forest land shall be liable.

2. Fiscal year 1985–86. For fiscal year 1985–86, the amount of the tax assessed against each owner of commercial forest land shall be determined by dividing $9,827,150 by the total number of adjusted acres of commercial forest land, rounded to the nearest 1/10 of a cent and multiplying by the number of adjusted acres owned by each taxpayer.

3. Minimum tax. If the amount calculated under this chapter is less than $5, the amount assessed shall be $5.

§ 2724. Definitions

As used in this chapter, unless the context otherwise indicates, the following terms have the following meanings.

1. Adjusted acres. "Adjusted acres" means the total number of acres of commercial forest land owned by a person throughout the State reduced by 500 acres. Cotenants of property, whether joint tenants or tenants in common, shall be treated as one person and shall collectively be entitled to only one 500-acre reduction.

*2. Commercial forest land.* "Commercial forest land" means land which is classified or which is eligible for classification as forest land pursuant to the Maine Tree Growth Tax Law, chapter 105, subchapter II-A, except that "commercial forest land" does not include land described in section 573, subsection 3, paragraph B, C or D. In determining whether land not classified under the Maine Tree Growth Tax Law is eligible for classification under that law, all facts and circumstances shall be considered, including whether the landowner is engaged in the forest products business and the land is being used in that business or there is a forest management plan for commercial use of the land or a particular parcel of land has been harvested for commercial purposes within the preceding 5 years.

*§ 2725. Due date*

*This excise tax is due May 1, 1986, and each subsequent May 1st.*

*§ 2726. Administration*

*1. Returns.* The State Tax Assessor shall prescribe and make available the required tax return. All owners of more than 500 acres of forested land, whether or not that land is commercial forest land, shall complete and file tax returns with the State Tax Assessor no later than March 1, 1986, and each subsequent March 1st.

*2. Date of ownership.* The ownership and use of forested land for purposes of this chapter shall be determined as of April 1st preceding the date that the tax return is due.

*3. Notice.* The State Tax Assessor shall notify all landowners subject to this tax of the tax assessed against them no later than 30 days before the date that the tax is due. Failure to notify a landowner shall not relieve the obligation to pay the tax when due.

*4. Supplemental assessments.* Supplemental assessments may be made in accordance with section 141.

*5. Interest and penalties.* Taxes remaining unpaid after the due date are subject to interest and penalty as provided in chapter 7.

*6. Enforcement.* The tax imposed by this chapter may be enforced by the same enforcement and collection procedures as those provided for income taxes in chapter 835.

*§ 2727. Credit; refund*

*The State Tax Assessor shall, to the extent reasonably possible, offset refunds of tax paid under chapter 366 as a credit against the tax due under this chapter. Amounts collected under chapter 366 for which a credit on the tax bills for fiscal year 1985–86 is not provided shall be refunded before May 1, 1986. Interest shall be paid in accordance with section 186.*

Sec. 3. Appropriation. The following funds are appropriated from the General Fund to carry out the purposes of this Act.

1985–86

FINANCE AND ADMINISTRATION, DEPARTMENT OF

Bureau of Taxation

| | |
|---|---|
| All Other | $6,000 |

Provides funds for Fire Suppression Tax refund administration.

Sec. 4. Appropriation. The following funds are appropriated from the General Fund to carry out the purposes of this Act.

1985–86

FINANCE AND ADMINISTRATION, DEPARTMENT OF

Bureau of Taxation —
Fire Suppression Tax Refunds

| | |
|---|---|
| All Other | $7,279,150 |

Provides funds for Fire Suppression Tax refunds for 1983 and 1984.

Sec. 5. Effective date. Section 4 of this Act shall take effect April 1, 1986.

In House of Representatives,............ 1985
Read twice and passed to be enacted.
.................................... Speaker

In Senate, .............................. 1985
Read twice and passed to be enacted.
..................................... President

Approved  ............................ 1985
..................................... Governor

## ANSWER OF THE JUSTICES

To His Excellency, Joseph E. Brennan, Governor of Maine:

In compliance with the provisions of section 3 of article VI of the Constitution of Maine, we, the undersigned Justices of the Supreme Judicial Court, have the honor to submit the following response to the question you propounded on November 14, 1985.

QUESTION: Does Legislative Document 1661 (Exhibit A) as amended by Committee Amendment "A" (Exhibit B), create a lawful excise tax, consistent with the Maine Constitution, on commercial forestry enterprise in the State of Maine?

We answer the inquiry in the affirmative, by stating our opinion that "AN ACT Establishing a Commercial Forestry Excise Tax and Providing an Appropriation for Refunding Maine Forest Fire Suppression Taxes Paid" provides for a lawful excise tax that does not violate article IX, § 8 of the Maine Constitution.

Article IX, § 8 provides in pertinent part: All taxes upon real and personal estate, assessed by authority of this State, shall be apportioned and assessed equally according to the just value thereof.

Under this constitutional provision a property tax is subject to a valuation requirement and an apportionment requirement. *Eastler v. State Tax Assessor*, 499 A.2d 921, 924 (Me.1985). Because the Act does not comply with those requirements, it can be sustained under article IX, § 8 only if it imposes an excise tax. *See id.* at 924. *See also State v. Western Union Telegraph Co.*, 73 Me. 518 (1882). The question thus becomes one of distinguishing an excise tax from a property tax.

While a property tax is levied on the ownership of property, an excise tax may only be levied on a use of the property. *Eastler*, at 924. The central issue in the determination of the nature of the tax is the subject matter of that tax. We examine the other characteristics as a key to ascertaining what is in fact the subject matter of the tax. *See Eastler*, at 924–925; *Western Union*, 73 Me. at 527, 531.

The Act embodies characteristic features of both an excise tax and a property tax. The Act is expressly designated as an excise tax "imposed upon the privilege of using" land in commercial forestry. § 2722. The court has given deference to such a legislative characterization as manifesting an intention to impose a valid excise tax. *Eastler*, at 925. *See also Opinion of the Justices*, 335 A.2d 904, 912 (Me.1975). Section 2726(6) of the Act provides that the tax may be enforced by the same procedures as those provided for income taxation which does not include a direct lien upon real estate. *See* 36 M.R.S.A. §§ 5311–5322 (1978 & Supp.1985–1986). Those collection procedures suggest an excise tax. *Weaver v. Prince George's County*, 281 Md. 349, 364, 379 A.2d 399, 407 (1977).

Certain other characteristics suggest a property tax. The tax rate is determined for fiscal year 1985–86 by dividing the sum of $9,827,150 by the total adjusted acreage subject to the tax, § 2723(2), and for subsequent fiscal years by dividing one-half of the total state appropriation for forest fire control by the total adjusted acreage, § 2723(1). This method of rate determination commonly characterizes a property tax. *Eastler*, at 925; *Western Union*, 73 Me. at 527. In addition, the lack of dedication of any excess funds to the needs of commercial forestry suggests that the tax is not an excise tax. *Eastler*, at 927. In *Eastler* the court viewed these characteristics not as dispositive in themselves, but as indicators of the subject matter of the tax. *See Eastler*, at 925, 927.

The Act purports to levy a tax on the use of land in a commercial forestry enterprise. § 2722. This use embraces the activity of growing commercially valuable trees. *See* § 2721. The Act defines "commercial forest land" as land classified or eligible for classification as "forest land" under the Tree Growth Tax Law. § 2724(2). The Tree Growth Tax Law provides in pertinent part:

> 3. Forest land. "Forest land" means land used primarily for growth of trees to be harvested for commercial use, but does not include ledge, marsh, open swamp, bog, water and similar areas, which are unsuitable for growing a forest product or for harvesting for commercial use even though these areas may exist within forest lands.

36 M.R.S.A. § 573(3) (Supp.1985–1986). Specifically excluded from "forest land" are ledge, swamp, bog, water, and other similar areas that "are unsuitable for growing a forest product or for harvesting for commercial use." *Id.* As defined by the Act, and contrary to the Tree Growth Tax Law, "commercial forest land" specifically does not include land when statutory, governmental, deed or charter restrictions prevent commercial harvesting of trees, or require a primary use of land other than commercial harvesting, or if the parcel is less than 100 acres and the sole use is harvesting trees for personal use. *See* § 2724(2) and § 573(3)(B), (C), (D). If forested land is not already classified under the Tree Growth Tax Law, the tax may also be imposed if the land is eligible for classification under that law. In determining whether the land is eligible for classification under the Tree Growth Tax Law, the Act provides that "all facts and circumstances shall be considered," in particular "whether the landowner is engaged in the forest products business and the land is being used in that business or there is a forest management plan for commercial use of the land or a particular parcel of land has been harvested for commercial

purposes within the preceding 5 years." § 2724(2). Finally, once the State Tax Assessor has determined the composition and ownership of commercial forest land, *see* § 2726(1), (2), the "adjusted acres" subject to the tax are determined by deducting 500 acres from the total commercial forest land acreage owned by a person or by co-tenants throughout the state. § 2724(1). Thus, the definition of land subject to the tax clearly focuses on the use of that land in commercial forestry. *Cf. Eastler*, at 926–927. *See also Opinion of the Justices*, 335 A.2d at 912. We conclude, therefore, that the subject matter of the tax is the use of land in commercial forestry.

Although it is our opinion that the Act is a facially valid excise tax and is not in contravention of article IX, § 8, we are unable to offer an opinion as to whether the application of the tax will violate other constitutional provisions such as due process as suggested by amici briefs. Such a determination can be made only within the context of a concrete, fully developed factual situation with the benefit of adversary evidentiary and legal presentations. *See Opinion of the Justices*, 437 A.2d 597, 610 (Me.1981).

> Respectfully submitted
> VINCENT L. McKUSICK
> Chief Justice
> DAVID A. NICHOLS *
> DAVID G. ROBERTS
> ELMER H. VIOLETTE
> DANIEL E. WATHEN
> CAROLINE D. GLASSMAN
> LOUIS SCOLNIK
> Associate Justices

### ANSWER OF JUSTICE NICHOLS

To His Excellency, Joseph E. Brennan, Governor of Maine:

Not concurring in the opinion of my colleagues, in compliance with the provisions of section 3 of article VI of the Constitution of Maine, I, the undersigned Justice of

* See separate answer.

the Supreme Judicial Court, have the honor to submit my individual response to the question you propounded on November 14, 1985.

To the question "Does Legislative Document 1661 (Exhibit A) as amended by Committee Amendment "A" (Exhibit B) create a lawful excise tax, consistent with the Maine Constitution, on commercial forestry enterprise in the State of Maine?" I answer in the negative.

In whatever trappings it appears, the character of a tax must be ascertained by its incidents and from the natural and legal effect of the language of the enactment. 16 E. McQullin, *Municipal Corporations* § 44.190 (3d ed. 1984). The proposition is well established that the courts will examine a tax and, notwithstanding by what name it is designated, determine its nature as a property tax or an excise tax. *Storaasli v. Minnesota*, 283 U.S. 57, 62, 51 S.Ct. 354, 355, 75 L.Ed. 839 (1931); *Continental Motors Corp. v. Township of Muskegon*, 376 Mich. 170, 135 N.W.2d 908, 911 (1965). An excise tax is not laid directly upon property. *Robinson v. Fidelity Trust Company*, 140 Me. 302, 306, 37 A.2d 273 (1944). Instead, it is a charge imposed on a use of the property or upon the voluntary act of engaging in the occupation which is the subject of the excise.

When the potato tax law was enacted, the levy was not imposed on the number of acres the farmer owned; instead, the tax was imposed per barrel of potatoes raised. Thus measured by the use made of the land, the potato tax was held to be a true excise. *State v. F.H. Vahlsing, Inc.*, 147 Me. 417, 431, 88 A.2d 144 (1952).

When the sardine tax law was enacted, the levy was not on the square feet of factory space, nor the number of vessels owned; instead, the tax was imposed per case of sardines produced. Thus measured by the extent of the sardine packer's engaging in the occupation, the sardine tax was held to be a true excise. *State v. Stinson Canning Co.*, 161 Me. 320, 329, 211 A.2d 553 (1965).

Those who now seek to impose an excise on commercial forestry have departed from such precedents; L.D. 1661 levies a tax computed, not on the trees harvested or the lumber produced, but on the acreage owned. This is the fundamental flaw in the enactment. The fact that certain types of land are excluded from the acreage subject to the tax does not overcome this flaw. In no way does a tax on the acreage owned measure the use the owner is making of those lands.

L.D. 1661 does not tax use; it taxes ownership.

Moreover, I cannot indulge in the presumption that ownership of a total of at least 500 acres of such land, which may be in small parcels and in several towns, necessarily means that the owner is engaged in commercial forestry. A true excise tax is based upon an actual use, not upon an assumption as to what the use may someday be.

When the Washington Legislature undertook to levy a tax on rents derived from real property, excluding from taxation income of under $300 per month, it was held to be a property tax which lacked the uniformity required by that state's constitution. *Apartment Operators Association of Seattle, Inc., v. Schumacher*, 56 Wash.2d 46, 351 P.2d 124, 125 (1960). I would reach the same result in testing the tax proposed to be levied on forest land by the provisions of L.D. 1661.

A property tax by any other name is still a property tax.

Further, it should be observed that if L.D. 1661 becomes law, a question may arise as to whether the classification employed to determine which acreages of forest land will bear the burden of this tax denies some taxpayers the equal protection of the laws guaranteed them by article I, section 6–A, of the Maine Constitution. That, however, is another question to be resolved in the context of a litigated case where the relevant facts may be fully presented.

In sum, my opinion is grounded in what I perceive to be a violation of article IX, section 8, of our Constitution which requires property taxes to be apportioned and assessed equally according to the just value thereof.

Dated November 25, 1985.

Respectfully submitted,
DAVID A. NICHOLS
Associate Justice